E-FILED

Monday, 01 March, 2021  10:34:16 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cr-20071-MMM-EIL |
| | ) | |
| TORI L. RILEY, | ) | |
| | ) | |
| Defendant. | ) | |

# <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendant's Amended Motion (Doc. 37) to

Suppress Evidence and the United States' Response (Doc. 38). The Court held an evidentiary

hearing on the matter on February 9, 2021. This Order follows.

## BACKGROUND[1]

On September 18, 2019, Officer Kline of the Bradley Police Department observed a black

Jeep Liberty driving past him and ran a LEADS inquiry on the vehicle. The inquiry returned

information indicating that the two registered owners of the vehicle, Jocelyn Jefferson-Boyd and

her deceased husband, did not have valid driver's licenses. Meanwhile, the Jeep turned into a

Circle K gas station and parked at a gas pump. Officer Kline pulled his vehicle up to the Jeep and

activated his emergency lights before approaching the driver's side of the vehicle to question Ms.

Boyd about the suspended license. Defendant Riley was seated in the front passenger seat, and

asked Officer Kline if she could use the restroom inside the gas station. Officer Kline requested

---

[1] The following facts are derived from the parties' briefs and the dashcam video submitted by the United States in
support of its Response. Doc. 38-1

Defendant wait in the vehicle while he returned to his squad car to confirm the status of Ms. Boyd's license.

After confirming Ms. Boyd's license was suspended, Officer Kline returned to the Jeep and asked Boyd to step out of the vehicle. Boyd insisted her license was not suspended because she had paid the necessary fines and fees, so Kline again returned to his squad car to check Boyd's driving status with dispatch. In addition to learning her license was suspended, Officer Kline also learned of Boyd's lengthy history of failing to appear for court. Therefore, he decided to arrest Boyd instead of issue her a citation. Meanwhile, Defendant Riley again asked to use the restroom, prompting Officer Kline to remark to Officer Hammond that "it's making me nervous" that Riley wanted to get out of the car so badly. Doc. 38-1 at 23:49:27.

After Officer Kline placed Ms. Boyd in the back of his squad car, he approached Defendant Riley in the front passenger seat of the Jeep to confirm whether she could lawfully drive the vehicle from the scene and to inform her Boyd would need $150 to bond out of jail. Officer Kline asked Defendant to step out of the vehicle. *Id.* at 23:51:36. The officer then asks Defendant if she has anything on her the officers need to be concerned with. *Id.* at 23:51:51. Defendant initially answers "no," but seconds later, after Officer Kline asks Defendant to step back towards his patrol vehicle, Defendant says "I'm not gonna lie, man… I got a gun." *Id.* at 23:52:08. Thereafter, Defendant is immediately placed in handcuffs and two firearms are recovered from her waistband.

Defendant now moves to suppress the statements she gave to law enforcement and the two firearms recovered from her person. Doc. 37.

2

LEGAL STANDARD

The Fourth Amendment protects individuals from unreasonable searches and seizures of their persons or property. Traffic stops are seizures within the meaning of the Fourth Amendment, and must therefore satisfy the reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). The Fourth Amendment permits brief investigative stops such as traffic stops when a law enforcement officer has a particularized and objective basis for suspecting the particular persons stopped of criminal activity. *Navarette v. California*, 572 U.S. 393, 396 (2014). Likewise, a search of an individual's person must be supported by reasonable suspicion that the individual to be searched is engaged in criminal activity or is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

DISCUSSION

In her Motion, Defendant argues the law enforcement officers lacked a valid reason to detain Defendant at the gas station, the seizure of Defendant's person was conducted without reasonable suspicion or probable cause, and the officers had no reason to initiate the search of Defendant. Doc. 37. In its Response, the United States argues Defendant's brief detention was proper in light of the circumstances of the traffic stop and to preserve officer safety. Further, Defendant's admission to possessing firearms provided a sufficient legal basis to authorize the search of her person. Doc. 38, at 6.

**(1) Whether Defendant was Lawfully Detained**

Defendant argues the seizure of her person was conducted without reasonable suspicion or probable cause because the officers had no reason to suspect Defendant was involved in any criminal activity or that she was in the process of committing a crime. Doc. 37, at 7. In support of her argument, Defendant notes that she was seated inside the Jeep unsupervised during most

3

of the traffic stop, the driver was allowed to sit on the hood of the patrol car, and the officers

stated on the video that the stop was a "basic suspended driver" issue.

In its Response, the United States notes that an observed traffic law violation provides

sufficient probable cause to authorize a stop of a vehicle. Doc. 38, at 7 (citing *Whren v. United*

*States*, 517 U.S. 806, 810 (1996)). Here, it is undisputed that officers had probable cause to

believe the driver of the Jeep was operating without a valid driver's license, so the stop was

lawful at its inception.

The United States further argues the authority to temporarily seize a driver and

passengers during a lawfully initiated traffic stop continues for the duration of the stop. *Id*. at 8 In

support, the United States cites the Supreme Court's decision in *Arizona v. Johnson*.

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a
> traffic violation. The temporary seizure of driver and passengers ordinarily
> continues, and remains reasonable, for the duration of the stop. Normally, the stop
> ends when the police have no further need to control the scene, and inform the
> driver and passengers they are free to leave. See *Brendlin,* 551 U.S., at 258, 127
> S.Ct. 2400. An officer's inquiries into matters unrelated to the justification for the
> traffic stop, this Court has made plain, do not convert the encounter into something
> other than a lawful seizure, so long as those inquiries do not measurably extend the
> duration of the stop. See *Muehler v. Mena,* 544 U.S. 93, 100–101, 125 S.Ct. 1465,
> 161 L.Ed.2d 299 (2005).

*Arizona v. Johnson*, 555 U.S. 323, 333 (2009). In determining the duration of a stop, courts look

to when "tasks tied to the traffic infraction are—or reasonably should have been—completed."

*Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Aside from determining whether to issue a

ticket, an officer's mission includes "inquiries such as checking the driver's license, determining

whether there are outstanding warrants against the driver, and inspecting the automobile's

registration and proof of insurance." *Id*. at 355. Such inquiries "serve the same objective as

enforcement of the traffic code: ensuring that vehicles on the road are operated safely and

responsibly." *Id*.

4

The United States argues the stop was not yet completed by the time Ms. Boyd was arrested and placed in the back of the squad car. "Instead, officers had to finish securing the scene, in part by either towing the Jeep away or locating a licensed driver to remove the vehicle." Doc. 38, at 13–14. In support of this argument, the United States relies on *United States v. Vargas*, 848 F.3d 971 974 (11th Cir. 2017). In *Vargas*, the court stated:

> The problem for Vargas is that Minor did not complete his duties between the time the stop was made and the time Castro consented to the search of the vehicle, or for that matter at any time during the search. Minor had stopped Castro because he was not operating his vehicle in a safe manner—he was tailgating and he did not stay in his lane. In the course of permissible "ordinary inquiries," he discovered that Castro did not have a driver's license, so Castro could not legally operate the vehicle. In an attempt to find someone who could, Minor asked Vargas if he had a driver's license but Vargas didn't have one either. Finally, Minor went even further in his attempt to end the detention and get the vehicle off the side of the interstate highway. He asked Castro and Vargas if they knew someone with a license they could call to drive the vehicle away. They didn't. All of Minor's actions were taken in the lawful discharge of his duties, which included enforcement of the law requiring that any person driving a vehicle be licensed to do so. That is, in the words of the <u>Rodriguez</u> opinion, "fairly characterized as part of [his] traffic mission." <u>Id.</u> at 1615. It was after Minor discovered that neither man had a driver's license, and while the continued detention was still lawful, that Minor asked Castro for permission to search the vehicle. And unlike the driver in <u>Rodriguez</u>, Castro consented.
>
> The fact that Minor had earlier informed Castro that he was issuing a warning is irrelevant. Under state law Minor had a duty not to allow Castro or Vargas, who were unlicensed, to drive the vehicle. Preventing them from driving off without a license is lawful enforcement of the law, not unlawful detention. What prolonged the stop was not Minor's desire to search the vehicle but the fact that both occupants of it could not lawfully drive it away. The district court's ruling that the seizure did not violate the Fourth Amendment was correct.

*United States v. Vargas*, 848 F.3d 971, 974–75 (11th Cir. 2017). Applying *Vargas* to the facts of this case, the officers' "mission" was not complete by the time they arrested Ms. Boyd. Rather, they were required to finish securing the scene by either towing the vehicle or finding a licensed driver to remove it for Ms. Boyd. Therefore, the stop was not impermissibly prolonged.

**(2) Whether the Search of Defendant was Proper**

Finally, Defendant argues the officers had no reason to initiate a search of Defendant's person because they lacked reasonable suspicion Defendant was engaged in criminal activity or that she was armed and dangerous. Doc. 37, at 8. Specifically, Defendant argues that based on the behavior of both Defendant and the officers at the scene, there is no evidence the officers feared Ms. Riley was armed or dangerous or that she was engaged in suspicious activity. In making this argument Defendant recognizes the authority of law enforcement to order the passenger of a detained vehicle to exit the car, *United States v. Yancey*, 928 F.3d 627, 630 (7th Cir. 2019), but argues the facts of this case are distinct because unlike the defendant in *Yancey* who fled the scene, here Defendant "gave the officers zero justification for preventing her from using the restroom or for searching her person." *Id*. at 9.

Given the Court's prior analysis that the inception and duration of the stop were lawful and the parties' agreement that officers may lawfully order a passenger out of a stopped vehicle, the issue now becomes whether the officers had reasonable suspicion to believe Defendant was engaged in criminal activity or that she was armed and dangerous. At this point, Defendant had asked to use the restroom multiple times, leading one officer to remark that her requests were making him nervous. Significantly, when asked whether she had anything on her the officers needed to be concerned about, Defendant admitted she had a firearm on her person. Only after this exchange was Defendant searched. Under these facts, the officers had lawful authority to inquire whether she possessed any weapons due to her proximity to the officers and her repeated requests to use the restroom. Upon Defendant's admission that she possessed a firearm, the search of Defendant's person was permissible. Accordingly, Defendant's Motion (Doc. 37) to Suppress is denied.

**CONCLUSION**

For the reasons set forth above, Defendant's Amended Motion (Doc. 37) to Suppress Evidence is DENIED.


Signed on this 1st day of March, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge
